RHODES *v.* THE GEORGIA RAILROAD AND BANKING CO.

Whether a boy of thirteen years, who assumed to assist the servants of a railroad company, at their request, in moving a loaded car, without the knowledge, consent or authority of the company, and while thus employed was injured so that he died, could be held responsible for his acts and conduct, is for determination by the jury upon the proof as to his knowledge of the distinction between good and evil and his capacity to comprehend and avoid the danger to which he was exposed. Sufficiency of such knowledge and capacity would prevent a recovery for the homicide ; otherwise there might be a recovery should the jury believe the company was negligent.

(a) The boy was a volunteer and not a fellow-servant.

SIMMONS, J., not presiding, because of sickness.

January 27, 1890.

Railroads. Negligence. Master and servant. Before Judge LUMPKIN. Morgan superior court. September term, 1889.

Reported in the decision.

FOSTER & BUTLER, for plaintiff.

J. B. CUMMING and BILLUPS & MUSTIN, for defendant.

BLANDFORD, Justice.

The plaintiff in error brought his action against the defendant in error to recover damages for the homicide of his son, and the following is in substance the declaration filed by the plaintiff: On the 8th day of October, 1887, William Rhodes, the son of plaintiff, thirteen years old, was asked by one Andrew Love, an employé of the defendant, to assist in the movement, by hand,

of a loaded car of defendant; it being the business of said Andrew Love to move cars as this one was being moved. This car was being shoved by hand along the side-track of the defendant at its depot at Madison. In response to said request, the said William Rhodes joined defendant's employés and other persons who, like himself, had been asked to assist at the rear end of the car. He endeavored to help push it along the side-track in the desired direction. There not being sufficient room not occupied by others for him to get to the car so as to make his efforts effective, "an agent and employé, seeing this, directed him, the said William, to go in front of said car, where there was no other person, and to lend his assistance by pulling. In obedience to said direction or request," the said William Rhodes went to the front of the car, and seizing a round of the ladder attached thereto, commenced pulling. Other persons were behind the car and on each side pushing, and he alone in front pulling, and entirely out of sight of all the agents and employés of the defendant and of the other persons engaged in moving the car. As the said William Rhodes was walking backward and pulling with all his strength, he stumbled over a stone which was lying between the rails of said side-track, and which the employés of the road were in the habit of using for the purpose of "scotching" cars when moved as this was being moved. "Being quite exhausted by his exertion in pulling, he was unable to recover himself, and those behind and on each side, not seeing or knowing of his perilous condition, continuing to shove and push said car," he was run over and killed. The agents and employés of defendant "were wanting in care and diligence in asking the said William Rhodes, a youth of tender years, to assist them in moving said car." Also "in permitting him to assist them." Also, "they were careless and negligent in having said stone

between the rails of said side-track." . Also, "they were grossly negligent and carelessly unmindful and indifferent of human life in putting a youth of such tender years in a position of itself so dangerous, which was, in this instance, greatly enhanced by the fact that he could not be seen by others engaged in moving said car, and there was no agent, employé or other person, engaged in moving or superintending the moving of said car, placed by said company or its employés in front of said car, or in such position as to keep a lookout ahead to see on the track, and give such notice or warning as might become necessary to prevent accident or injury to any one."

To this declaration the defendant demurred, upon the ground that the same was not sufficient in law to authorize a recovery by the plaintiff. This demurrer was sustained by the court, and the plaintiff excepted and brings the case here for review.

The main question in this case is, whether one who is alleged to have been but thirteen years of age had sufficient discretion as *prima facie* to know what he was doing and be responsible therefor. It may be laid down as a general rule that a person who assumes to. assist the servant of another, without being authorized so to do by the master, and while thus acting becomes injured, has no right of action against the master for his injury, upon the ground that he is a mere volunteer. But where one who was of the age of thirteen years assumed upon his part to assist the servants of a railroad company in moving a loaded car, and while thus employed was injured to such an extent that he died, and such service on his part was without the knowledge or consent of the railroad company, and without any authority from the company so to act, would the company under such circumstances be liable for an injury to such person ? If the person were an adult, there would clearly be no liability on the part of the company.

But as the aeclaration alleges that the person thus injured was of the tender age of thirteen years, whether the company would be liable or not would depend upon the amount of discretion and knowledge which such infant had at the time. Our code, §4294, declares that " A person shall be considered of sound mind who is neither an idiot, a lunatic, or afflicted by insanity, or who hath arrived at the age of fourteen years, or before that age, if such person know the distinction between good and evil." Section 4295 declares that "An infant under the age of ten years, whose tender age renders it improbable that he or she should be impressed with a proper sense of moral obligation, or be possessed of sufficient capacity deliberately to have committed the offence, shall not be considered or found guilty of any crime or misdemeanor." Our code further declares a person under the age of fourteen years incompetent to make a will, but if of that age, he is competent as by the common law. An infant fourteen years of age may act as an executor to a will, if the testator so direct. It is insisted by counsel for the defendant in error that the court should declare as a matter of law that a person thirteen years of age had sufficient discretion and knowledge to render him responsible for his acts. We do not think that the court is authorized so to declare; but in view of our code, the court could declare that an infant who had arrived at the age of fourteen years *prima facie* had sufficient capacity and knowledge of right and wrong to make him responsible for his conduct and acts; that an infant under the age of ten years *prima facie* did not have such discretion and capacity, and could not be charged with a knowledge of right and wrong so as to make him responsible for his acts or conduct, unless it was clearly shown he had such capacity and discretion. Between the ages of ten and fourteen years, if a person knew the distinction between

good and evil in the particular instance, he would be liable for his acts and conduct. But in a case like the present, where the infant is under the age of fourteen, before he could be held responsible for his acts and conduct, it would have to be shown by proof that he knew the distinction between good and evil and had capacity to comprehend the danger and avoid the same. The court cannot of itself determine these questions so as to fix the responsibility upon him for his act. They would be for determination by the jury upon the proofs submitted on the trial of the case; and we are of the opinion that if the son of the plaintiff in error (who had not arrived at the age of fourteen years) knew, or had sufficient capacity to know the distinction between good and evil in the particular instance and to protect himself, he would be responsible for his own conduct. And if this should turn out to be the case, then if the plaintiff's son voluntarily, at the request of defendant's servants, assisted said servants in moving the car, and while thus engaged placed himself in a perilous condition, in consequence of which he was killed, there could be no recovery. But if he did not have sufficient capacity, there might be a recovery, should the jury believe the company was negligent. It is apparent from this declaration that the plaintiff's son, who was killed, was but a mere volunteer, and what he did was voluntary on his part and without the knowledge or consent of the defendant in error. Therefore, if he did have sufficient capacity, his father could not recover for his homicide. This will depend upon the facts submitted in proof to the jury.

We think what we have said on the subject of the discretion of the son is fully sustained by the case of Nagle *v.* Allegheny Railroad Co., 88 Penn. St. 35, in which it is decided that an infant of the age of fourteen years is presumed to have sufficient capacity to be sensi-

ble of danger and have power to avoid it, and that this presumption will stand till overthrown by clear proof of the absence of such discretion as is usual with infants of that age. The court may further decide as a question of law that *prima facie* an infant under the age of ten years has not sufficient capacity to be sensible of danger or have the power to avoid it, and this presumption will continue until overcome by proof showing the contrary. Whether, therefore, in the present case, the plaintiff's son had sufficient capacity to be sensible of danger and to have the power to avoid it, is a question for the jury, he being of that age at which our code says that if he knew the distinction between good and evil, he would be responsible, otherwise he would not be.

The plaintiff's son was not a fellow-servant with the servants of the defendant in error. To be the servant of another, there must be some contract, or some act on the part of the master which recognizes the person as a servant, either express or implied. It is laid down as a general rule that a person who assists the servant of another in an emergency cannot recover from the master on account of the negligence or misconduct of the servant. Such servant cannot, by his officious conduct, impose a greater duty on the master than that which the latter owes to his hired servant at common law; and it is immaterial whether the injury occurred while assisting the servant gratuitously or at the request of the latter. See Dregg *v.* Midland R. R. Co., 1 Hurl. & N. 773; Osborne *v.* Knox, etc. R. R. Co., 68 Me. 49; 2 Thompson on Negl. 1045. In Holmes *v.* Northeastern R. R. Co., L. R. 4 Exch. 254 (affirmed in Exchequer Chamber, L. R. 6 Exch. 123), the plaintiff was a person entitled to the delivery of a wagon-load of coals from the defendant, a railway company. The usual mode of delivery was impossible on account of the crowded state of the station. He was hence allowed by the company's

station-master to go to another place, where the wagon was to get the coals, and while so doing he fell through a hole, owing to the negligent keeping of the company's premises.  The court held that he was engaged, with the consent of the company, in a transaction of interest to both parties, which prevented him from being there as a volunteer, and entitled him to have the company's premises kept in a reasonably safe condition; and he was allowed to recover.  So, also, in the case of Wright *v.* London & Northeastern Railway Co.  In this case the case of Holmes was cited by Lord Coleridge, C. J., with approval.  The case referred to places the liability of the company upon the ground that the plaintiff was not a mere volunteer, but was there on the company's premises for the purpose of attending to his own business, which was likewise connected with the business of the company.  The plaintiff and the defendant seem to have had an interest in common in the business to be transacted.  But in the present case, there was no business in common between the plaintiff's son and the defendant.  He was not there even as a licensee by the company.  The cases which have been referred to do not sustain the contention of the plaintiff in error.  We think, however, that the court erred in sustaining the demurrer to the plaintiff's declaration, for the reasons we have already stated; and the judgment is

*Reversed.*