CLEVELAND TERMINAL AND VALLEY RY. CO. v. RAYMOND GILBERT MARSH.

1. FAILURE OF WITNESS TO BE MORE SPECIFIC IN HIS STATEMENTS—EFFECT.
   A statement that a person was "one of the train crew" will not be taken from the jury merely because the witness does not know the name and did not describe such person.

2. A WITNESS MAY TESTIFY AS TO HIS AFTER ACQUIRED KNOWLEDGE REGARDING A CERTAIN MATTER.
   Where a witness states, that at the time he saw a certain object he did not know what it was, but now knows that it was a signal torpedo; such statement will not be taken from the jury, because such after acquired knowledge is not necessarily hearsay.

3. GIVING OF DIRECT EVIDENCE.
   Direct evidence may be given to rebut a probable inference from testimony given by the opposing side.

4. SPECIAL FINDINGS BY JURY.

The jury cannot be required to find specially, in response to interrogatories, the probative facts from which they deduce an ultimate fact called for by another interrogatory.

5. USE OF RAILROAD TRACK AS A HIGHWAY BY THE PUBLIC—EFFECT.

Where the use of a railroad track by the public as a highway, is acquiesced in by the company, a duty to exercise due care—having regard to such use—is imposed upon the company in favor of the persons so using the track.

6. DETERMINING WHETHER A PERSON IS A VOLUNTEER OR AN EMPLOYEE.

Where, without authority from defendant, railroad company, its station agent employed the plaintiff, a boy ten years of age, to light the switch lamps; the mere fact of such employment does not relieve the defendant of a duty it otherwise would owe him; and in determining whether the plaintiff, by such employment became a volunteer, in the sense of assuming the risks of an employee of the company, his age and capacity must be considered.

ERROR to the Court of Common Pleas of Summit county.

MARVIN, J.

The proceedings in this court are brought to reverse a judgment of the court of common pleas of this county rendered at the April term, 1898.

In the original action Raymond Gilbert Marsh, an infant, by his next friend Amanda M. Marsh, brought suit against the Cleveland Terminal and Valley Railroad Company seeking to recover for personal injuries sustained by him on the eighteenth day of April, 1896, and which injuries, he says, were caused by negligence on the part of the railroad company.

The line of railroad owned and operated by the defendant below passes through the village of Myersville in this county, at which village is a station of said road.

The station agent at Myersville, at the time of this injury, was Milo Swinehart. A part of his duties was to place lighted lamps at switch stands north of the railroad station each evening at about dusk, and to take in such lamps on the following morning and clean and fill them preparatory to being again put out in the evening. At the time of the injury to the plaintiff complained of and for several months prior thereto, the plaintiff had performed the duty of placing these lamps in the evening, taking them in in the morning and preparing them again for use. This he did as an employe of Swinehart and not as an employe of the railroad company.

The line of the railroad, as it passes through the village and by the station at Myersville, is substantially North and South. A few rods north from the railroad station is a public highway running east and west. There is also a public highway leading to the southwest from Myersville, but extending no further north than the east and west road already mentioned. There is another public highway running north and south and passing the village of Myersville some twenty rods east of the railroad track.

At the time of the injury complained of, the plaintiff was ten years and about eight months of age. On the evening of the date already given, between five and six o'clock, he started out from the engine-house of the railroad company which is near to the station, to the north with two switch-lamps in his hands, ready to be placed at the switch-stands. He placed one of them at a point a little south of the east and west road already mentioned, then passed along across the public highway for the purpose of placing the other lamp. Before reaching the switch-stand,

however, the plaintiff observed an object lying upon the track, which turned out to be what is known as a signal torpedo, a small metallic device containing a highly explosive substance.

Upon noticing this, he placed his lamp upon the ground and proceeded to investigate this torpedo, striking it with a stone which caused it to explode, from which explosion he was very seriously injured, resulting in the loss of one eye.

On the part of the plaintiff below it is claimed that this torpedo was placed upon the track by some agent or servant of the railroad company, and that so placing it and leaving the same was well known and acquiesced in by the company, and was negligence on the part of the company in view of the further claim that this part of the right of way of the railroad company between the east and west road and the switchstand where he was to place the lamp which he still had with him at the time of the injury, and on for a considerable distance further north, was at the time of the injury, and for a long time prior thereto had been used by the public, including children, as a thoroughfare for pedestrians where they were accustomed habitually to walk between the village of Myersville and localities farther north, and that this use was well known and acquiesced in by the railroad company.

A considerable number of witnesses were introduced by the plaintiff, on this subject; among them, the plaintiff himself, Isaac J. Kramer, Wilson Myers, Clyde Treash, and John J. Marsh—the grandfather of the plaintiff. The question of this use, by the public, including children, of the right of way, was fairly submitted to the jury, and if the witnesses named and others who testified on the subject on the part of the plaintiff, were believed by them, the finding that the right of way was so used, was justified. The question of whether such use by the public was material in the case is considered later in this opinion.

The claim is further made on behalf of the plaintiff below, that the railroad company, through its officers and agents, had knowledge of the employment of the plaintiff by Swinehart, and were bound to conduct the operations of the road at Myersville with reference to such employment. This question will also be considered later in the opinion.

The trial in the court of common pleas resulted in a verdict and judgment for Marsh. Motion for a new trial was filed and overruled and proper exception taken.

The railroad company, by its amended answer upon which the case was tried, denied that it was responsible in any way for the presence of this torpedo upon the railroad track. It denied that it was negligent in any manner contributing to the injury of the plaintiff, and alleged that whatever injury was sustained by the plaintiff, was contributed to, if not entirely, caused by his own negligence.

Numerous exceptions were taken by the railroad company to the rulings of the court at the trial upon the introduction and rejection of evidence.

Dr. M. M. Bauer, a witness on the part of the plaintiff, who was called for the purpose, among other things, of making it appear to the jury that the torpedo was placed upon the track by an employe of the company after having received it from Swinehart, another employe of the company, testified to having been in the station of the defendant company at Myersville on the day of the injury, at about the middle of the day, and to having then over-heard a conversation between Swinehart, the station agent, and another man whom he designates as "one of the

train crew" (there was standing at the time at Myersville a freight train). He states that he did not know this man, but that he was "one of the train crew."

A motion was made to take this statement from the jury on the ground that the testimony of Dr. Bauer showed that he did not know whether or not the party whom he thus designated, was a member of the crew connected with the train of the railroad company. It is urged that as he did not know the man, and does not describe him, he could not have known whether or not he was one of the train crew.

The court overruled the motion, and, we think, correctly. The witness might well be warranted in saying that the man was "one of the crew" of a railroad train, by his appearance, his being with the train, his conduct in regard to the train, and though he might be mistaken in supposing one who to all appearance was a member of the crew, to be such member, still we think that the answer which he gave should not have been taken from the jury. Suppose that Dr. Bauer had not known Mr. Swinehart at all, but had stepped into the railroad station at Myersville, found him in the office, asked for a ticket to Akron or elsewhere, purchased it from him and paid for it to him would it be claimed that he might not say that he saw and purchased a ticket from the station agent although it might turn out that he was mistaken in this and that some person had impersonated the station agent? Still the court would hardly be justified in saying that the answer made by the witness, that he purchased a ticket of the station agent, should be taken from the jury.

Dr. Bauer heard something said by this train-man to the station agent, but did not understand what it was. He heard the agent answer, however, "Here is one; I have got one." The agent then stepped to a cupboard which was in his room, and took therefrom an object which Dr. Bauer says he distinctly saw; and the station agent then said: "Yes, here is one; I have got one;" and he saw this taken by the train-man, who thereupon went out of the station and to the north toward the rear of his train. Dr. Bauer says that at the time he did not know what this object was, but he now knows it was a signal torpedo.

The railroad company asked that this evidence be taken from the jury, and its motion was overruled.

It is urged that since Dr. Bauer did not at the time know that this was a signal torpedo, he ought not to be permitted to say that he now knows that it was, because it is said that at the best such knowledge must be simply hear-say. We do not regard the act of the court in this matter as erroneous. Dr. Bauer may very well have since learned that the object saw distinctly on the eighteenth of April, 1896, and the name of which or the character of which he did not then know, is a signal torpedo, and this not by hearsay in the sense in which that term is used in the law of evidence, but by actual knowledge.

It can hardly be said that each of us has not often seen some object which at the time he did not know the name of or the character of, but which he later became so familiar with as to know certainly what the object which he saw was. To hold otherwise would be to hold that one may not learn so as to certainly know what a given thing is that he did not know the name of or the character of when he first saw it.

Milo Swinehart was called as a witness by the defendant, and upon his cross-examination was asked if he did not on the evening of the day of the accident, at the home of the plaintiff's mother, say to her "This is the torpedo that he struck; he may have known what it was, but he

did not know that it was explosive. It is hard for a boy of his age to know that they were explosive." Objection was made to this, and the objection was overruled. It is urged that this was error.

In his direct-examination Swinehart had testified that he had told the plaintiff at a time when he was in his office, what these torpedoes were (there being several of them present, and the plaintiff examining them), and that he then told him that they were explosive; that he must not handle them because they were explosive and might hurt him. Clearly the question asked in cross-examination was to test the credibility of the witness and, if possible, get an admission from him that he had made a statement out of court wholly inconsistent with his statement in court. Upon being permitted to answer, the witness said, " No, sir."

Thereafter the plaintiff's mother was upon the stand, and was asked about this conversation at her house, and testified that Swinehart did say at her house at the time referred to in question put to him in cross-examination that the plaintiff knew what the torpedo was, but did not know it was explosive. This, although objected to, was permitted to be answered, and an exception taken. As this was directly in contradiction of the testimony given by Swinehart, it was proper.

Dr. Bauer was again called by the plaintiff in rebuttal, and asked and, over the objection of defendant, permitted to answer this question :

" At the time you testified before that you were in the freight department of the station there and someone came in and had a conversation with Milo Swineheart, I will ask you if you saw Milo Swinehart, give to this man a car seal?

And also this question:

" Was it one of those locks that he gave to this man ? "

Each of these questions was answered in the negative, and a proper exception was taken. It is urged on the part of the plaintiff in error that answers to these questions should not have been permitted, because nobody had testified that at the time referred to, Swinehart gave to anyone either a car seal, or a car lock; but Swinehart in his direct examination had testified that in the cupboard from which Dr. Bauer says the torpedo was taken, there were at the time car seals and car locks, and he describes each of them. The object of the railroad company in eliciting this testimony from Swinehart was clearly with a view to making the claim that if Dr. Bauer saw anything given to a trainman at this time, it was either a car seal or a car lock, and to rebut this was the object of the plaintiff below in asking the questions complained of, of Dr. Bauer.

Without doubt, since by the description of the car seal and car lock, neither of them was very dissimilar in appearance to the torpedo, the claim would have been made to the jury that the witness might well have mistaken one of those for a torpedo, and we think such claim would have been legitimate and that it was therefore, entirely proper to rebut such inference by asking these questions of the witness.

While J. J. Marsh was upon the stand as a witness for the plaintiff and was being inquired of in reference to the use, made by the public of the portion of the right of way of the railroad company at the place referred to, he was asked " How often per week or day have you seen people go up and down the track ? And, again, this question :

" You do not quite understand my question. I do not mean how often have you seen a particular person go up and down the track but how often have you seen people go up and down the track per week

or .month as the case may be." To each of these questions an
objection was interposed and overruled, and a proper exception taken.
It is said that this was permitting the witness to testify as to the
use of the right of way by the public after the injury and up to
the time of the trial. The witness had, prior to this time, testified
that he had been the keeper of a grocery store at Myersville ever since
the first of April, 1889, and that during all that time he had been
familiar with the situation and use of the track and right of way.
And then he had been asked this question, "About how many
different people—state whom if anybody, you have seen coming
or going up the track." This he answered, giving the names of fourteen
people and then adding, " And you might almost include all the Milheim
people; they would come down the track when coming to the store or
to the post-office." In answer to another question he gave the names
of other people whom he had seen going up and down the track. His
attention had been called to the fact that what was wanted was the use
of the track by people from 1889, the time when he began his residence
at Myersville, to the time when the plaintiff was injured, and though
the questions objected to may have included a later time, we think that
neither the witness nor the jury could have been misled by supposing
that it was the use made of the right of way after the accident, that was
being inquired about.

Questions of evidence are made in the record, the correctness of the
rulings upon which is involved in a discussion of still another question
raised in various ways upon the record, and this is a question of whether
the plaintiff, being at the time of his injury in the employment of Swine-
hart, an agent of the company who was entirely without authority on
the part of the company to so employ him to do a part of his work, can
have any right to a judgment in the action, even though his injury was
without fault on his part and resulted from the negligence of a servant
or servants of the company. It is said that one thus employed, is to be
treated as a volunteer, that in no event can his rights be greater than
those of one who voluntarily undertakes to assist the servants of the
railroad company. This question is raised in the motion which as made
to take the case from the jury at the close of the plaintiff's evidence.
It is raised in the motion for a new trial, in the exceptions taken to the
charge of the court, the exceptions to a refusal of the court to charge the
requests of the defendant, and. as already said, in rulings upon questions
of evidence.

In Harriman v. Railroad Company, 45 Ohio St., 11, our Supreme
Court hold that where a railroad company has for a long time permitted
the public, including children, to travel and to pass habitually over its
railroad at a given point without objection or hindrance, it should, in
the operation of its trains and management of its road, so long as it
acquiesces in such use, be held to anticipate the continuance thereof,
and is bound to exercise care, having due regard to such public use and
proportioned to the public danger to persons so using its road.

So that, if the plaintiff was entitled to the same protection from the
railroad company as children generally, and if the jury found the other
necessary facts, the railroad company might be liable.

The question, therefore, arises, whether by reason of the plaintiff's
being engaged in work under employment of Swinehart, which it was
the duty of the latter to perform for the railroad company, he lost the
rights to which he would have been entitled as one of the general public.

It is said that as Swinehart employed this boy without authority, to allow a recovery here would be in violation of well-settled principle of law.

Numerous cases support the proposition that a servant can not by any act of his in the employment of another impose upon the master a higher liability for negligence than the master is under the servant himself.

Barstow v. Old Colony R. R. Co. 143 Mass., 535; Johnson v. Ashland Water Co., 71 Wis., 553; Wischan v. Richards, 136 Penn. St., 109; Plower v. Penn. Co., 6 Am. Rep., 251; Osborne v. Knox & Lincoln R. R. Co., 68 Maine, 49.

The same proposition is sustained in Bailey's Personal Injuries, sec. 5255.

The same authorities and many others support the general proposition that one who assists in performing the work of a master, either voluntarily without request from anybody, or at the request and by employment of a servant of the master, assumes all the liability of a servant of the master, and is entitled to no protection against the negligence of the servants of the master to which he would not be entitled as a fellow servant with them.     See Wood's Law of Master and Servant, sec. 455 and authorities there cited.

These authorities, however, are dealing with cases where the party seeking to recover is old enough to understand and appreciate the danger to which he subjects himself when he undertakes the work.

It would seem that the age and capacity of the plaintiff below in this action should not be overlooked in determining his rights here.

In Gulf, Colorado & Santa Fe R. R. Co. v. Jordan Jones, 76 Texas, 350, a recovery was allowed to a negro boy sixteen years old, who was injured by the railroad company while serving it as a temporary brakeman.     The first clause of the syllabus in that case read:

"If the minor had not the mental capacity and experience to appreciate the danger and if he be employed in a dangerous business, not by the contract of the parent, and if he be injured as the result of his inexperience, the master ought to be held liable."

In Rhoders v. Georgia R. R. and Banking Co., 84 Ga., 320–20 Am. St. Rep., 362–The Supreme Court of Georgia reversed a judgment of the trial court which sustains a demurrer to a declaration which alleged that an infant son of the plaintiff was killed by the negligence of the defendant while aiding in moving by hand a certain car.     The decedent was not in the employ of the company, but was helping to move the car at the request of a servant of the company.     The decedent was thirteen years old.     The opinion in this case fully recognizes the proposition that a person who assumes to assist the servant of another, such servant having no authority to employ assistance, if, while thus acting, is injured, has no right of action against the master for his injury, and this upon the ground that he is a mere volunteer.     The court uses this language: "If the person were an adult, there would clearly be no liability on the part of the company; but, as the declaration alleges that the person thus injured was of the tender age of thirteen years, whether the company would be liable or not would depend upon the amount of discretion and knowledge which such infant had at the time."

It must be borne in mind, too, that the plaintiff below claimed and introduced evidence tending to show that the portion of the railroad grounds where this boy was injured, was and long had been in common

use by the public, including children, as a pathway for pedestrians, with the full assent and acquiescence of the railroad company. If this claim was established, then the plaintiff, as one of the public, might have been at the place where he was injured, and be entitled to a higher degree of care on the part of the company than one of its servants would have been; and it may well be doubted whether the simple fact that he was sent out by an employe of the company deprived him of the rights which another boy, not so employed, of the same age and capacity, would have had if he had been injured in the same way as the plaintiff.

To hold that the mere fact that the plaintiff was at the place where he was injured, at the request of Swinehart for the purpose of performing a duty which Swinehart was under contract with the railroad company to perform would prevent a recovery in this action, would seem to be to made this act of Swinehart in employing the plaintiff, have the effect of relieving the company from a duty which it otherwise owed to the plaintiff.

If the use of the grounds of the company by the public at the place where the injury occured, was such as is claimed by Marsh, then the company owed a duty to him, as one of the general public, from the performance of which, we hold, it was not released by the mere fact he was at the time, in the performance of work at the request of Swinehart which the latter should have performed himself.

We are not prepared to say that the mere fact that this boy was engaged in aiding the station agent in the discharge of his duties and at his request, deprived him of the protection to which he was entitled had he been at the place where he was, without being thus employed.

That he was there for the sole purpose of performing this work which it was the duty of Swinehart to perform, is substantially found by the jury in answer to the first two questions propounded to them for special findings, and we treat the case as though the first question had been distinctly answered to that effect.

Entertaining the views which we do, the answers made to the third and fourth interrogatories propounded to the jury, are not important.

As to the fifth interrogatory, the answer to which is complained of, it is for the same reason not important; but we think that the defendant was not entitled to have this question answered.

Question three, which reads: "Does the evidence establish to your satisfaction that any agent or representative of the company other than Swinehart, the station agent, had knowledge that prior to the accident the plaintiff was accustomed to pass up and down the track to attend to the switch lights?" call for the finding of an ultimate fact; and Question five, which reads: "If you answer Question three in the affirmative, please state the facts which you find established by the evidence and which leads you to your affirmative conclusion," calls upon the jury to state probative facts from which they find the ultimate fact called for in Question three. This we do not think is contemplated by the statute.

If we are right in what we have already said, then the questions raised in the record as to the admission of evidence upon the use by the public of the right of way of the railroad company as a thoroughfare for pedestrians, were properly disposed of by the court. And the first five requests to charge, made by the defendant below, were properly refused. The first of these requests reads:

"If you find that at the time the plaintiff, Raymond Gilbert Marsh, received his injury, he was on the property of the railroad company for

no purpose except to place the north switch light in position pursuant to the request of the station agent Swinehart, then I say to you that the fact that the railroad company had permitted the public to travel over this part of its property without objection, would not entitle the plaintiff to receive at the time of his injury that degree of protection from injury which such public would have been entitled to receive, nor that degree of protection he would have been entitled to receive had he been upon the property as one of the public."

The second, third and fourth requests are based upon the same view of the law, and, for the same reason that the first request was properly refused, each of the others was properly refused.

The fifth request which reads:

"The petition in this case does not aver that the defendant had knowledge of the fact that the plaintiff was lighting and carrying the switch lamps back and forth or that the plaintiff was going back and forth along the railroad for any purpose, and, unless you can find from the evidence that the injury to the plaintiff was wilfully and intentionally caused by the defendant, then your verdict should be for the defendant."

This request was properly refused if, as we hold the law to be, this plaintiff was entitled to the protection to which he would have been entitled as one of the general public.

The request was framed upon the theory that the plaintiff being at the place where the injury occurred, for the sole purpose of doing the work of Swinehart, could not recover unless he brought home to the railroad company knowledge that he was thus employed. It has already been said that we hold such knowledge on the part of the company was not essential to a recovery by Marsh.

Exception is taken by the plaintiff in error to several propositions given in the charge to the jury. These propositions thus excepted to, are, some of them, direct quotations from the syllabus and the opinion in the case of Harriman v. R. R. Co., supra, and if the law of that case is properly applicable to this case, no error was committed in the giving of these propositions.

It is said that the charge as a whole is misleading. And this would be true if the law is, as claimed by the plaintiff in error, as to the rights of this boy while engaged in the performance of the duties which Swinehart was under obligation to perform for the company; but, as we hold Marsh is not precluded from recovery solely because he was in the discharge of duties which Swinehart had undertaken to perform for the company, we hold that there was no error in the charge of the court as given. We find no error in the record prejudicial to the plaintiffs in error.

And the judgment of the court of common pleas is affirmed.

*Allen & Cobbs*, for plaintiff in error.

*Tibbals & Frank*, for defendant in error.